IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| FRANKLIN SAMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-06-73-L |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his concurrent applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382.  Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues.  The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed his application for disability insurance benefits on June 8, 2004, and submitted his application for supplemental security income benefits on May 8, 2004

(protective filing date). (TR 50-52, 187-190). In these applications, Plaintiff alleged that he became disabled on May 13, 2004, due to degenerative disc disease in his neck and pain. (TR 61). Plaintiff's applications were administratively denied. (TR 23, 24, 191, 196). At Plaintiff's request, a hearing *de novo* was conducted on June 28, 2005, before Administrative Law Judge Kuchulis ("ALJ") at which Plaintiff and a vocational expert ("VE") testified. (TR 209-236). Subsequently, the ALJ issued a decision in which the ALJ found that Plaintiff has a severe impairment due to neck pain, that despite this impairment Plaintiff has the residual functional capacity ("RFC") to perform light work, and that this severe impairment prevents him from performing his past relevant work as a ranch manager, door installer, and apartment maintenance worker. (TR 15-19). Based on Plaintiff's RFC for work and vocational characteristics, and relying on the agency's Medical-Vocational Guidelines, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (TR 19-20). Plaintiff's request for review of the ALJ's decision was rejected by the Appeals Council (TR 5-7), and Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this cause of action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). The court will look to the record as a whole to determine whether the evidence which supports the Commissioner's decision is substantial in light of any contradicting evidence. Nieto v.

Heckler, 750 F.2d 59, 61 (10th Cir. 1984); Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983)(*per curiam*).  If the Commissioner fails to apply the correct legal standard or substantial evidence does not support the Commissioner's decision, the court may reverse the Commissioner's findings. Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984)(*per curiam).* However, the court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). To find that the Commissioner's decision is supported by substantial evidence in the record, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion.  Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§416(i), 1382c(a)(3)(A).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  See 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f) (2005); see also Williams v. Bowen, 844 F.2d 748, 750-752 (10th Cir. 1988)(describing five steps in detail).  The claimant bears the initial burden of proving that he has one or more severe impairments.  20 C.F.R. §§404.1512, 416.912 (2005); Turner v. Heckler, 754 F.2d 326, 328 (10th Cir. 1985).  Where the plaintiff makes a *prima facie* showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show "the claimant retains the capacity to perform an

alternative work activity and that this specific type of job exists in the national economy." Turner v. Heckler, 754 F.2d at 328; Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. Plaintiff's Claims and Defendant's Response

Plaintiff contends that the ALJ erred at step two of the requisite sequential evaluation process by failing to find that Plaintiff has a severe mental impairment due to depression. Relying on Clifton v. Chater, 79 F.2d 1008 (10th Cir. 1996), Plaintiff further contends that the ALJ erred as a matter of law by failing to explain his finding at step three that Plaintiff's impairment is not *per se* disabling under the agency's listing of impairments.  Moreover, Plaintiff asserts that his neck impairment satisfies Listing 1.04(C) for disorders of the spine. Plaintiff also asserts that there is not substantial evidence to support the ALJ's RFC finding at step four and that the ALJ erred as a matter of law in rejecting the opinion of Plaintiff's treating physician without sufficient explanation.  Finally, Plaintiff contends that the ALJ erred in finding that Plaintiff's allegation of disabling pain and limitations was not credible.

Defendant responds that there is substantial evidence in the record to support the ALJ's decision, that no error occurred in the ALJ's evaluation of the evidence, and that the Commissioner's decision should therefore be affirmed.

IV. Step Two - Identifying Severe Impairments

At step two, the ALJ must determine "whether the claimant has a medically severe impairment or combination of impairments." Bowen v. Yuckert, 482 U.S. 137, 140-141(1987).  This determination is governed by the agency's "severity regulation[s]" at 20 C.F.R. §§ 404.1520(c), 416.920(c) (2005).  Pursuant to these regulations, the claimant must

make a "threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities." Williams v. Bowen, 844 F.2d 748, 750-751 (10th Cir. 1988). This requires a *de minimis* showing of medical severity in that the claimant must show that the impairment "would have more than a minimal effect on his ability to do basic work activities...." Id. at 751.

Plaintiff contends that he provided adequate evidence to show that he has a severe impairment due to depression and that the ALJ erred by failing to find that Plaintiff's depression constitutes a severe impairment. In support of this assertion, Plaintiff first states that "[t]he record demonstrates that claimant was involuntarily admitted to a hospital by Mental Health Services of Southern Oklahoma." Plaintiff's Brief, at 6. However, there is no record reflecting Plaintiff received mental health treatment in a hospital as an admitted patient. The record shows that Plaintiff first sought treatment for "[p]ain relief counseling and Med. Clinic" on December 6, 2004, seven months after he alleged that he became disabled and six months after he applied for disability benefits. (TR 182). At the initial evaluation at Mental Health Services of Southern Oklahoma on December 6, 2004, Plaintiff advised the counselor that he had recently experienced a headache that "was so bad, he began to bang head against the wall, beat on himself and destroy furniture. Police were called and he was EOD'd to Griffin" Memorial Hospital. (TR 182). Plaintiff also stated that he had been admitted to Griffin Memorial Hospital for only one day and that he "got drunk that night[,] became violent and threatened to kill himself [a]lthough he does not remember." (TR 175). No records from Griffin Memorial Hospital or any other treatment facility appear in

the record with respect to this alleged incident.

At the time of his initial evaluation at Mental Health Services of Southern Oklahoma in December 2004, the counselor assessed Plaintiff as having major depression, recurrent with psychotic features, and indicated a current level of functioning of 45. (TR 183). Although Plaintiff was advised to undergo individual and/or group rehabilitative treatment by the clinic counselor (TR 178), there are no records of therapeutic treatment other than the notes of a clinic physician showing Plaintiff was evaluated for medication management purposes on December 8, 2004, and at monthly intervals in January through May 2005. (TR 165-176). During this six-month period, Plaintiff was prescribed anti-depressant medication and sleeping aid medication although he voluntarily stopped taking the sleeping aid medication after two months. (TR 165-176). In May 2005, the treating mental health professional noted that Plaintiff was depressed and "appear[ed] to be in pain" and he was continued on anti-depressant medication and advised to return in five weeks. (TR 166).

The ALJ rejected Plaintiff's allegation of a severe mental impairment and noted in his decision that Plaintiff's depression had not lasted twelve months, that Plaintiff had received monthly treatment from a mental health professional for only six months, and that any limitations in Plaintiff's daily activities had been "mainly related to neck pain." (TR 17). Social Security Administration ("SSA") regulations provide that an impairment must be "expected to result in death" or "to last for a continuous period of at least 12 months" to satisfy the "duration requirement." 20 C.F.R. §§ 404.1509, 416.909 (2005). Because the medical record did not show continuous treatment for a mental impairment for a twelve-

month period, there is substantial evidence in the record to support the ALJ's finding that Plaintiff's depression did not constitute a severe impairment.

Moreover, Plaintiff's own testimony supports the ALJ's conclusion. Plaintiff stated only in general and vague terms that the anti-depressant medication he was taking at the time of the administrative hearing "takes away the desire to do anything." (TR 228). However, Plaintiff did not relate specific functional limitations to a mental impairment. Rather, Plaintiff's testimony focused on limitations caused by neck pain. For instance, Plaintiff related an inability to concentrate to occasions "[w]hen the pain gets bad" and not to any mental impairment. (TR 225).

Plaintiff contends that the ALJ should have considered the level of functioning assessment of 45 noted by the counselor who evaluated Plaintiff at his mental health treating clinic in December 2004. A global assessment of functioning ("GAF") rating between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). However, "[s]tanding alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work." Lee v. Barnhart, 2004 WL 2810224 (10th Cir. Dec. 8, 2004)(unpublished op.). There are no further records showing a persistently low level of functioning assessment by a treating mental health professional. Considering the record as a whole, no mental health professional has suggested that Plaintiff has a mental impairment restricting his ability to work. Thus, the sole

GAF assessment made at the time of Plaintiff's initial evaluation was not essential to the ALJ's determination of the step two issue of severe impairments. See Zachary v. Barnhart, No. 03-7032, 2004 WL 720300 (10th Cir. Apr. 14, 2004)(unpublished op.)(finding ALJ was not required to discuss claimant's GAF rating in making RFC assessment where ALJ noted and summarized report of consulting physician). No error occurred with respect to the ALJ's consideration of the evidence of a mental health impairment.

The ALJ reviewed the objective medical evidence in his decision and found that Plaintiff has a severe impairment due to neck pain. (TR 17). The medical record submitted by Plaintiff reflects that in January 2004 Plaintiff sought treatment from his family physician, Dr. Howard, for neck pain beginning three weeks previously and radiating into his left shoulder and left arm. (TR 140). Dr. Howard noted that Plaintiff exhibited pain with movement of his left shoulder and arm but good reflexes. The physician prescribed muscle relaxant and anti-inflammatory medications for neck pain with probable nerve root compression and peripheral neuropathy. (TR 140). Plaintiff underwent a magnetic resonance imaging ("MRI") scan of his neck, which Dr. Howard interpreted as showing "significant bilateral severe neuroforaminal stenosis" at one cervical level. (TR 140).

Dr. Howard referred Plaintiff to a neurosurgeon, Dr. Friedman, who evaluated Plaintiff in January 2004. In a letter appearing in the medical record, Dr. Friedman advised Dr. Howard that during the office visit Plaintiff appeared to be in "moderate distress" due to neck pain and exhibited decreased cervical range of motion and pain in his left arm when turning his head to the left. (TR 146-147). However, Dr. Friedman noted Plaintiff's gait was

normal, his strength was normal in his upper extremities, and his reflexes were intact. (TR 146). Dr. Friedman also noted that he had reviewed the Plaintiff's cervical MRI scan, that the scan showed no evidence of acute disc herniation, and that the physician had prescribed anti-inflammatory medication and advised Plaintiff he needed physical therapy to increase neck strength and mobility. (TR 147). Plaintiff did not return for another scheduled appointment with Dr. Friedman, and there are no further records of treatment of Plaintiff by Dr. Friedman. (TR 145).

There is one further note of treatment of Plaintiff by Dr. Howard, who noted in May 2005 that Plaintiff returned "for a disability determination" although he had not seen Plaintiff since January 2004. (TR 184). Dr. Howard noted that Dr. Friedman had found that Plaintiff did not have a surgical lesion or disc herniation. (TR 184). Dr. Howard noted that Plaintiff's neck was tender with manipulation and noted a diagnostic assessment of "[n]eck pain with radiculopathy secondary to some neuroforaminal stenosis without disc herniation." (TR 184). Dr. Howard noted he completed a disability form for Plaintiff based solely on Plaintiff's subjective estimations of his functional abilities. (TR 184). There is no other record of medical treatment of Plaintiff for a neck impairment or for pain. The ALJ's decision reflects consideration of Plaintiff's treating and consultative physicians' records, and the ALJ's finding at step two that Plaintiff has a severe impairment due to neck pain is supported by substantial evidence in the record.

V. Step Three - Listed Impairments

Plaintiff contends that the ALJ erred at the third step of the requisite sequential

evaluation procedure by (1) failing to explain his finding that Plaintiff is not *per se* disabled and (2) failing to find that Plaintiff has a severe spinal disorder satisfying the listing for spinal disorders.

At the third step of the requisite sequential evaluation procedure, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. §§ 404.1520(d), 416.920(d)(2005). Bowen v. Yuckert, 482 U.S. 137, 141 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." Id. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990)(emphasis in original; citations omitted).

In Plaintiff's case, the ALJ concluded at steps two and three that "[t]he medical evidence indicates that the claimant has neck pain, an impairment that is 'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (TR 17). Relying on Clifton, supra, Plaintiff alleges that this finding is reversible error because the ALJ failed to discuss his analysis of the evidence he relied upon or the listings he considered in reaching the step three finding. Respondent concedes that the ALJ's step three finding is devoid of reasoning in support of the finding. However, Respondent submits that the error is harmless. As Respondent suggests, the Tenth Circuit Court of Appeals has

recognized in a decision subsequent to the Clifton decision that "an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (2005). Plaintiff does not address the Fischer-Ross decision or its applicability to the ALJ's decision. Defendant, however, contends that the ALJ's decision should be affirmed because the ALJ's step four evaluation provides an adequate basis for the ALJ's step three finding that Plaintiff's neck impairment is not severe enough to meet or equal a listed impairment.

In order to confirm the ALJ's step three finding, it is necessary to determine whether the ALJ's findings at step four "justify his step three conclusion." Id. at 734. Before reaching this issue, however, consideration must be given to Plaintiff's assertion that his neck impairment satisfies the requirements for Listing 1.04(c), 20 C.F.R. pt. 404, subpt. P, app. 1. Plaintiff's own argument forecloses this assertion, however. In Plaintiff's brief, Plaintiff sets forth the pertinent listing, which requires medical evidence of "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(C)(2005). Plaintiff points to no medical evidence showing that Plaintiff is unable to ambulate effectively, which the regulations further define as "having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. pt. 404,

subpt. P, app. 1, § 1.00(B)(2)(b)(2005). In the absence of any such objective medical evidence in the record, Plaintiff failed to satisfy his burden of presenting evidence establishing that his impairment met or equaled the listed impairment. Fischer-Ross, 431 F.3d at 733.

The listing for disorders of the spine is the only relevant listing in light of the medical record. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. At the fourth step of the evaluation process, the ALJ found that Plaintiff has the RFC to perform work at the light exertional level. (TR 18-19). In reaching this determination, the ALJ reviewed the objective medical evidence contained in the report of the consultative neurosurgeon, Dr. Friedman, and noted that the neurosurgeon found no evidence of disc herniation in MRI testing of Plaintiff's cervical spine. (TR 17). The ALJ also reasoned with respect to Plaintiff's allegation of disabling pain that the medical records "do not show repeated hospitalizations or aggressive forms of therapy (such as surgery or treatment at a pain clinic) that would be expected if he experienced severe, persistent, and unremitting pain" and that the "medical record does not show serious muscle weakness, muscle spasm, atrophy, weight loss, or other signs of progressive physical deterioration..." (TR 17). The ALJ also noted that Plaintiff's pain and symptoms appeared to be "brought on or aggravated by strenuous exertional activities" and that "[n]o examining physician has indicated that the claimant is unable to work with reasonable, logical, and credible supporting medical signs or findings." (TR 17-18).

The ALJ's RFC determination addressed the objective medical evidence in the record with respect to Plaintiff's functional ability in a manner that clearly showed the absence of

the findings necessary to establish the requirements of Listing 1.04. Part A of this listing requires objective "[e]vidence of nerve root compression" and "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." Part B of the listing requires objective evidence of "[s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medially acceptable imaging, manifested by severe burning or painful dysesthesia...." Part C of the listing requires objective medical evidence of "an inability to ambulate effectively...."

Although the ALJ clearly erred by failing to discuss the evidence and explain the basis for his finding that Plaintiff is not disabled *per se* at step three, the error is harmless because no reasonable administrative factfinder considering the medical evidence in the record could have found that Plaintiff's neck impairment satisfies or equals the requirements of the listing for spinal disorders. Because the ALJ's discussion of the medical record in reaching the RFC determination addressed and rejected the findings needed for a step three determination as well, the ALJ's step three determination is supported by substantial evidence in the record, and the ALJ's failure to provide a written rationale for his step three conclusion is harmless error.

## VI. Step Four - RFC for Work

Plaintiff contends that there is not substantial evidence in the record to support the ALJ's finding at step four of an RFC for light work. At the fourth step of the evaluation process required of administrative factfinders, the ALJ recognized that he was required to determine whether the Plaintiff retains the RFC for perform the requirements of his past

relevant work or other work that exists in significant numbers in the economy. At step four, the claimant bears the burden of proving his inability to perform the duties of his past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993). The assessment of a claimant's RFC necessarily requires a determination by the ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

Plaintiff first complains that the ALJ's evaluation of the medical evidence was too brief and was "simply summary." Plaintiff's Brief, at 10. The ALJ was not required to discuss every piece of medical evidence in the record. Clifton, 79 F.3d at 1009-1010. An ALJ is required to discuss the evidence relied upon and to also "discuss the uncontroverted evidence he chooses not to rely upon, as well as significant probative evidence he rejects." Id. at 1010. In this case, the ALJ's discussion of the medical evidence in the record was adequate considering the brevity of the medical record presented by Plaintiff.

With respect to Plaintiff's allegation that the ALJ's RFC assessment is not supported by the evidence, Plaintiff does not point to specific medical evidence in the record that is inconsistent with the ALJ's RFC assessment. The ALJ found that Plaintiff has a severe impairment due to neck pain. This finding is certainly consistent with the records of Plaintiff's treating and consultative physicians in which the physicians noted that Plaintiff exhibited pain with neck movement and MRI testing interpreted as showing evidence of cervical stenosis without disc herniation. However, as the ALJ reasoned, no physician indicated that Plaintiff was unable to work due to pain. Rather, the consultative neurosurgeon noted Plaintiff's gait, upper extremity strength, and reflexes were normal. (TR 146). The neurosurgeon prescribed only conservative treatment of anti-inflammatory medication and suggested Plaintiff undergo physical therapy to relieve Plaintiff's symptoms. However, Plaintiff did not return to Dr. Friedman for a second scheduled appointment for treatment.

Plaintiff's assertion that the ALJ ignored his "treating physician's opinion" is disingenuous in view of the record. Plaintiff refers to the note of Dr. Howard dated May 6, 2005, in which Dr. Howard clearly states that he had merely set forth Plaintiff's subjective estimations of his functional limitations in a disability form provided by Plaintiff and that the physician had not visually observed any such limitations. (TR 184). Thus, this physician's note is not a "treating physician's opinion" of objective clinical findings which would warrant any special consideration by an ALJ in determining Plaintiff's RFC for work. The ALJ provided sufficient reasons for his RFC assessment, and the RFC assessment is

supported by substantial evidence in the record.

Plaintiff suggests that it was error for the ALJ to consider the frequency with which Plaintiff sought medical treatment in determining the issue of Plaintiff's credibility. However, in determining the credibility of subjective pain allegations, the administrative factfinder may consider "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ ... and the consistency or compatibility of nonmedical testimony with objective medical evidence." Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988). Even if, as Plaintiff suggests, he was uninsured and lacked financial ability for private medical treatment, there are publicly-funded avenues for obtaining medical treatment, and there is no record that Plaintiff pursued such avenues. Rather, the record shows that Plaintiff did not persistently seek medical treatment or take medications consistent with his allegation of disabling pain and limitations. Moreover, as the ALJ reasoned in his decision, the objective medical evidence was not consistent with Plaintiff's allegation of disabling pain and limitations. No error occurred with respect to the ALJ's credibility determination, and it will not be disturbed. Because there is substantial evidence in the record to support the ALJ's determination that Plaintiff is not disabled within the meaning of the Social Security Act, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter

AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for disability insurance and supplemental security income benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____September 7th_____, 2006, in accordance with 28 U.S.C. §636 and LCvR 72.1. The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656(10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this _____18th_____ day of _____August_____, 2006.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE